01

02

03

04

05

06

07

08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  MARK WAYNE CLARK,                          )      CASE NO. C04-1647-JCC-MAT
                                               )
10        Plaintiff,                           )
                                               )
11  v.                                         )      REPORT AND
                                               )      RECOMMENDATIONS ON
12  DEAN MASON, et al.,                        )      DEFENDANTS' MOTION TO
                                               )      DISMISS
13        Defendants.                          )
    _____  )

14

15        Defendants have filed a motion to dismiss this 42 U.S.C. § 1983 action, in which plaintiff

16  is proceeding *pro se* and *in forma pauperis*.  (Dkt. 39)  Having considered the papers and

17  pleadings submitted by the parties, it is recommended that defendants' motion be GRANTED in

18  part and DENIED in part.[1]

19                                  **I.  Background**

20        Plaintiff is an inmate in the Washington state correctional system.  Plaintiff's complaint

21  names 25 defendants and includes 130 numbered paragraphs, as well as a number of attachments.

22  (Dkt. 6)  Twenty-three of the defendants appear to be correctional officials and employees, while

23  two defendants (Julia Garret and John Austin) are members of the state Indeterminate Sentencing

24  Review Board (ISRB).

25  _____

26        [1] Plaintiff had previously requested oral argument on this motion. (Dkt. 48, 52)  The Court
    finds that oral argument is not necessary to the disposition of this motion.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -1

01  Plaintiff's complaint lists four broad causes of action under 42 U.S.C. § 1983:

02  (1)    Denial of plaintiff's right to freedom of expression in violation of the First and

03  Fourteenth Amendments (¶ 118);

04  (2)    Retaliatory actions in violation of the First and Fourteenth Amendments (¶ 119);

05  (3)    Denial of due process in violation of the Fourteenth Amendment (¶ 120); and

06  (4)    Denial of plaintiff's property and liberty interests (¶ 121).

07  Under these four causes of action, plaintiff includes more than 40 separate subparagraphs, each

08  of which could be conceivably be construed as alleging a separate claim. *See* Complaint, ¶ 118(a)-

09  (l); ¶ 119(a)-(i); ¶ 120(a)-(t); ¶ 121(a)-(c). Plaintiff seeks declaratory and injunctive relief, as well

10  as compensatory and punitive damages. *Id.* ¶¶ 122-130.

11  Given its length and breadth, plaintiff's complaint is difficult to summarize briefly. Most

12  basically, plaintiff alleges that defendants have engaged in a variety of retaliatory acts against him

13  over a considerable span of time. Plaintiff alleges that in a case entitled *Clark v. O'Connor*, he

14  prevailed at a jury trial in an action that he brought against Department of Correction employees.

15  Plaintiff alleges that a newspaper article about this case was placed in his central file, apparently

16  at some point in 1996. *Id.* ¶¶ 35-37. He further alleges that copies of this article were "circulated

17  and reviewed by numerous WSR [Washington State Reformatory] officials which triggered an

18  'ongoing' campaign of retaliation against the Plaintiff, which includes ALL of the retaliatory

19  events described throughout this Complaint." *Id.* ¶ 36 (emphasis in original). Among other

20  things, plaintiff alleges that various defendants retaliated against him by issuing false infractions,

21  sabotaging his parole hearings, transferring him to another facility, and terminating his extended

22  family visits (EFVs) with his daughter.

23  Plaintiff previously filed a complaint in this Court that raised virtually all of the claims that

24  he raises in this action. That case was entitled *Clark v. Leeburg*, C02-1382.[2] The *Leeburg* action

---

26  [2] It appears that the first named defendant in C02-1382 actually spells his surname as
"Leeberg," rather than "Leeburg." However, the Court refers to this case as "*Leeburg*" to ensure

01  was dismissed without prejudice in September 2003 by the Hon. Edward Rafeedie. (Dkt. 103 in

02  C02-1382) The *Leeburg* action was dismissed based on plaintiff's failure to exhaust administrative

03  remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. The

04  district court's judgment in *Leeburg* has been affirmed by the Ninth Circuit. (Dkt. 112 in C02-

05  1382)

06      In the instant case, defendants have moved to dismiss all or parts of plaintiff's complaint

07  on the following grounds: (1) failure to exhaust administrative remedies; (2) statute of limitations;

08  (3) failure to state constitutional violations; and (4) absolute or qualified immunity. (Dkt. 39)

09  Plaintiff requested and was granted two extensions to respond to defendants' motion to dismiss

10  (Dkts. 47 & 63), and was also granted leave to file an overlength brief in response to defendants'

11  motion (Dkt. 63). With leave of the Court, plaintiff submitted his opposition brief in two parts.

12  (Dkts. 56 & 65) The Court also granted plaintiff leave to file a surreply to defendants' reply brief,

13  to the extent that the surreply sought to respond to arguments that defendants raised for the first

14  time in their reply. (Dkt. 77)

## II.  Analysis

16      Because plaintiff is proceeding *pro se* in this matter, the Court construes his pleadings

17  liberally. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). In resolving a motion to

18  dismiss, the Court may consider documents that are attached to the complaint, as well as

19  documents whose contents are alleged in a complaint and whose authenticity no party questions.

20  *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In addition, the Court may take judicial

21  notice of matters of public record, such as court records. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1

22  (9th Cir. 1995).

### A.  Exhaustion of Administrative Remedies

24      Defendants argue that plaintiff has failed to exhaustive available administrative remedies

25

26  _____

    consistency with court records for that case.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -3

01  for some of his claims as required by the Prison Litigation Reform Act (PLRA).   The PLRA

02  includes the following requirement:

03              No action shall be brought with respect to prison conditions under section
            1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,
04          or other correctional facility until such administrative remedies as are available are
            exhausted.

05

06  42 U.S.C. § 1997e.  The burden of raising and proving the absence of exhaustion rests with

07  defendants.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a motion to

08  dismiss for a failure to exhaust administrative remedies, the Court may look beyond the pleadings

09  and decide disputed issues of fact.[3]  *Id.* at 1119-20.  Such a motion is treated as unenumerated

10  motion under Fed. R. Civ. P. 12(b).  *Id.* at 1119.

11          Defendants argue that if plaintiff has failed to exhaust administrative remedies for even one

12  of his claims prior to filing suit, the entire action should be dismissed.  (Dkt. 39, at 14)  In effect,

13  defendants ask the Court to apply a "total exhaustion" rule for actions governed by the PLRA.

14  Before reaching the question of whether to apply such a rule, however, the Court must decide

15  whether defendants have met their burden of showing that plaintiff has failed to exhaust available

16  administrative remedies for one or more claims.

17  1.      Collateral Estoppel Effect of *Clark v. Leeburg*

18          In evaluating whether plaintiff has exhausted administrative remedies, defendants argue

19  that the doctrine of collateral estoppel should bar plaintiff from relitigating certain issues

20  previously decided in *Clark v. Leeburg*, C02-1382.  As noted above, the *Leeburg* court dismissed

21  plaintiff's action without prejudice in September 2003 for failure to exhaust administrative

22  remedies.  In his complaint in this action, plaintiff argues that  *Leeburg* was unfairly dismissed,

23

24  _____

25          [3] The *Wyatt* court indicated that if a Court looks beyond the complaint to decide
    exhaustion issues, a plaintiff must have "fair notice" of his right to develop a record.  Here,
26  plaintiff was aware of his right to develop a record (Dkt. 48), and submitted a large volume of
    documents in opposition to defendants' motion to dismiss.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -4

01   allegedly due to false testimony and arguments offered by defendants.  *See* Complaint ¶¶105-12.

02        "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated

03   in previous litigation between the same parties."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318,

04   1320 (9th Cir. 1992).  Federal law controls collateral estoppel analysis when an earlier case had

05   been decided by a federal court.  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir.

06   2004).  Under federal law, three factors must be considered before applying collateral estoppel:

07        (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the
     issue must have been actually litigated [by the party against whom preclusion is
08        asserted] in the prior litigation; and (3) the determination of the issue in the prior
     litigation must have been a critical and necessary part of the judgment in the earlier
09        action.

10   *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993).

11        The issue raised here is whether plaintiff failed to exhaust his available administrative

12   remedies prior to filing his complaint in *Leeburg*.  This issue is identical to the issue presented in

13   *Leeburg*.  Court records indicate that the exhaustion issue was actually litigated by plaintiff in

14   *Leeburg*.  *See* Dkt. 98 in C02-1382, at 13-24.  In addition, the determination of whether plaintiff

15   had exhausted his administrative remedies was clearly a critical and necessary part of the judgment

16   in the earlier action.  The order of dismissal in *Leeburg* explicitly found that plaintiff had failed to

17   exhaust administrative remedies for his claims, as required by 42 U.S.C. § 1997e, and dismissed

18   the action on that basis. (Dkt. 39, Ex. 1, Att. A)  Plaintiff appealed this judgment to the Ninth

19   Circuit without success.  (Dkt. 112 in C02-1382)

20        As such, the doctrine of collateral estoppel should preclude plaintiff from relitigating the

21   issue of whether he had exhausted administrative remedies for the claims asserted in    *Leeburg*

22   before he filed his complaint in that action.  While plaintiff asserts that defendants obtained

23   dismissal in *Leeburg* through false testimony and arguments, plaintiff had the opportunity in that

24   case and on appeal to address those issues.  *See, e.g.*, Dkt. 56, at 5 (plaintiff states that in his

25   appeals to the Ninth Circuit, he argued that the *Leeburg* court was in error when it dismissed his

26   complaint based on failure to exhaust administrative remedies because the court had allegedly

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -5

01  relied on false argument).

02  However, this does not mean that plaintiff is precluded in this action from litigating the

03  question of whether he exhausted available administrative remedies for his claims *after* the

04  *Leeburg* complaint was filed.  Defendants retain their burden of raising and proving non-

05  exhaustion on that point.

06  2.    Exhaustion of Plaintiff's Claims

07  To support their non-exhaustion argument, defendants have introduced a declaration and

08  accompanying documents from Dean Mason, the Grievance Program Manager for the state

09  Department of Corrections (DOC).  (Dkt. 39, Ex. 2)  Mr. Mason states that the Washington

10  Department of Corrections has established an Offender Grievance Program (OGP) to permit

11  prison inmates to file grievances challenging the following matters: (1) DOC institution policies,

12  rules, and procedures; (2) the application of such policies, rules, and procedures; (3) the lack of

13  policies, rules, or procedures that directly affect the living conditions of the offender; (4) the

14  actions of staff and volunteers; (5) the actions of other offenders; (6) retaliation by staff for filing

15  grievances; and (7) physical plant conditions.  *Id.* ¶ 4.  The OGP consists of four levels of review,

16  ranging from Level 0 to Level III.  *Id.* ¶ 6.

17  Mr. Mason also indicates in his declaration that an inmate may not file a grievance under

18  the OGP that challenges: (1) state or federal law; (2) court actions and decisions; (3)

19  Indeterminate Sentence Review Board actions and decisions; (4) administrative segregation

20  placement or retention; (5) classification/unit team decisions; (6) transfers; (7) disciplinary actions;

21  and several other aspects of incarceration.  *Id.* ¶ 4.  Mr. Mason notes that plaintiff "correctly states

22  in his complaint that issues relating to disciplinary hearings, to classification decisions, and to

23  transfers are not grievable" under the grievance program.  *Id.* ¶ 10.  Mr. Mason does not address

24  what actions a prisoner must take to exhaust administrative remedies in such circumstances.[4]

25  _____

26  [4] It should be noted that in the declaration Mr. Mason submitted in *Leeburg*, he stated that
    "[w]hen an offender receives the response to their initial or Level 0 grievance that said grievance

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -6

01        In response to a Level III appeal filed by plaintiff in April 2004, Mr. Mason indicated that

02  it would be "redundant" for a prisoner to file a grievance through the OGP in cases: (1) where a

03  prisoner believes that a classification or disciplinary action is motivated by retaliation; or (2) when

04  a disciplinary action results in the loss of property.  (Dkt. 39, Ex. 2, Att. H)  Instead, Mr. Mason

05  appears to indicate that such complaints should be pursued through the appeal processes for

06  classification and disciplinary actions.

07        In paragraphs 13-18 of his declaration, Mr. Mason describes several instances where

08  plaintiff allegedly failed to exhaust his administrative remedies properly through the OGP.  (Dkt.

09  39, Ex. 2, at ¶¶13-18).  However, defendants appear to indicate in their opening brief that they are

10  not basing their motion to dismiss on the issues identified in those paragraphs.  Instead, defendants

11  state that "[a]lthough Mr. Clark has not followed the intent or the proper guidelines for the

12  grievance system for these issues, Defendants do not raise the defense of exhaustion specifically

13  for these claims as Mr. Clark has no further remedy he can seek within the Department of

14  Corrections."  (Dkt. 39, at 13)   Instead, defendants limit their non-exhaustion argument to a

15  relatively discrete number of issues raised in the complaint.  *Id.*

16       a.    Exhaustion of Claims Regarding DOC 450.100

17        First, defendants argue plaintiff failed to exhaust administrative remedies regarding his

18  claims that DOC 450.100 is unconstitutional.  DOC 450.100 is a policy governing sexually explicit

19  materials.  (Dkt. 39, at 6)  In his complaint, plaintiff alleges that defendants denied his right to

20  freedom of expression in violation of the First and Fourteenth Amendments:

21          [W]hen in general, the DOC established and implemented the 450.100 policy which
            is so unconstitutionally vague and over broad that it allows DOC officials to apply
22          their own subjective interpretations in such an inconsistent manner that it makes it

23

24  raises an issue that is 'non-grievable', there is one more level of appeal to be made before the
    'non-grievable' determination becomes final.  That final level of appeal is to the Office of the
25  Grievance Program Manager at DOC headquarters in Olympia, Washington."  (Dkt. 39, Ex. 2,
    Att. A, at ¶ 7)  However, no similar statement was included in Mr. Mason's declaration in this
26  action.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -7

01  impossible for the Plaintiff to determine just what is and is not appropriate when
02  creating his art.

03  Complaint ¶118(l).  In his prayer for relief, plaintiff also requests an injunction ordering defendants
04  to "replace their 450.100 DOC policy with a less vague and less over broad policy that leaves no
05  doubt as to what is objectionable, and so that an inmate will know exactly which kinds of
06  depictions are subject to a major infraction as opposed to a minor infraction."  *Id.* ¶ 123(a).

07  In their opening brief, defendants assert that plaintiff did not fully exhaust his
08  administrative remedies with respect to this claim by filing a Level III appeal before his complaint
09  was filed on July 19, 2004. (Dkt. 39, at 13)  In response, plaintiff produced a document indicating
10  that he did in fact file a Level III appeal regarding DOC 450.100. (Dkt. 65, at Ex. HH)  However,
11  the document produced by plaintiff indicates that his Level III appeal was not decided until August
12  24, 2004 – more than a month after his complaint in this matter was received by this Court.  *Id.*
13  As such, it appears that plaintiff's available administrative remedies with respect to this grievance
14  were not fully exhausted before his complaint was filed.

15  In *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002), the Ninth Circuit held that the PLRA
16  requires a prisoner to exhaust administrative remedies before filing suit.  In cases where a prisoner
17  does not exhaust administrative remedies for a claim prior to filing suit, dismissal is required.  *Id.*
18  at 1199.  The court noted that "[r]equiring dismissal without prejudice when there is no presuit
19  exhaustion provides a strong incentive that will further . . . Congressional objectives [in enacting
20  the PLRA]; permitting exhaustion *pendente lite* will inevitably undermine attainment of them."
21  *Id.* at 1200-01.

22  In a surreply, plaintiff argues that because his grievance regarding DOC 450.100 concerns
23  a "new version" of the policy adopted in May 2004, this grievance is not related to any of the
24  claims in his complaint. (Dkt. 73, at 8-9)  However, plaintiff's complaint was filed after the new
25  version of the policy was adopted, in which he argues that DOC 450.100 is unconstitutional and
26  requests an injunction ordering defendants to change the policy.  This necessarily suggests that

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -8

01 plaintiff seeks to challenge the version of DOC 450.100 in effect at the time his complaint was

02 filed.  Plaintiff also does not point to any other evidence indicating that he filed grievances

03 challenging older versions of DOC 450.100 prior to filing suit.

04      Therefore, it appears that plaintiff did not exhaust available administrative remedies with

05 respect to claims that DOC 450.100 is unconstitutional before this complaint was filed.  Such

06 claims are therefore subject to dismissal for non-exhaustion under the PLRA.

07      b.   Additional Allegations of Non-Exhaustion

08      In their opening brief, defendants argue in a short paragraph that plaintiff failed to exhaust

09 his administrative remedies for several other claims.  Specifically, defendants assert:

10      Additionally, Mr. Clark never exhausted his administrative remedies with regards to
        his claims regarding his 10/15/99 book rejection appeal, all conspiracy claims, the
11      confiscation of his materials on 7/02/01 and 4/17/02, or any deprivation of hobby craft
        time. As such, all claims relating to these issues should be dismissed.
12

13 (Dkt. 39, at 13)  This paragraph does not include citations to any evidence in the record.  In

14 addition, it is difficult if not impossible for the Court to discern which specific claims the

15 defendants are referencing, since they do not cite any specific paragraph of plaintiff's complaint.

16 The Court is ill-equipped to search through plaintiff's complaint to try to identify the specific

17 claims that defendants are referencing.[5]  Defendants' bare assertions are not sufficient to meet their

18 burden of raising and  proving non-exhaustion.  *Wyatt*, 315 F.3d at 1120.

19      In any case, the record indicates that plaintiff submitted a lengthy initial grievance through

20 the OGP in March 2004.  (Dkt. 39, Ex. 2, Att. G)  This grievance (No. 0405545) appears to cover

21

22      [5] Plaintiff does not label any of his claims as conspiracy claims, nor does it appear that
23 plaintiff uses the term "hobby craft time" in his complaint.  Moreover, as discussed in Section II.C
   below, it does not appear that plaintiff intends to maintain property confiscation claims that are
24 independent of his retaliation claims.  In addition, plaintiff 3/15/99 book rejection appeal appears
   to have been raised in appeals that plaintiff sent to Mr. Mason and to prison superintendent Gary
25 Fleming in March 2004.  (Dkt. 65, Exs. Y and Z)  Additionally, claims related to the 3/15/99 book
   rejection appeal would be barred by the statute of limitations (*see* Section II.B below), which
26 would appear to make exhaustion on this issue a moot point.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -9

01  most if not all of the substantive issues in plaintiff's complaint. Defendants state that the grievance

02  "was rejected for being beyond timelines" and "was never appealed."[6]  (Dkt. 62, at 4)  However,

03  plaintiff has produced a document indicating that he sent a lengthy appeal of the rejection of his

04  grievance to Mr. Mason.  (Dkt. 65, Ex. Y)  In response, Mr. Mason agreed that the issues plaintiff

05  presented were not grievable and stated that he would "not address your issues regarding past

06  property confiscation and alleged retaliation related to those issues again."  (Dkt. 39, Ex. 2, Att.

07  G)

08          It should be noted that this grievance (No. 0405545) was not rejected as "non-grievable"

09  simply because it was untimely, as defendants suggest.  [7]  Instead, the grievance coordinator's

10  response also explained that "[c]lassification decisions and those issues requiring action through

11  the classification process such as transfer, custody, promotion/demotion, and so forth are non-

12  grievable as they have a formalized appeal process. The same applies to the disciplinary process

13  regarding sanctions."[8]  (Dkt. 39, Ex. 2, Att. G)  In an apparent attempt to respond to this

14  directive, plaintiff sent a lengthy appeal letter to Washington State Reformatory Superintendent

15  Gary Fleming that appears to have raised virtually all issues related to plaintiff's complaint.  (Dkt.

16  65, Ex. Z)  Mr. Fleming responded by stating "the issues you raised in your letter have all been

17  thoroughly addressed individually in the past, at both the local facility and higher DOC

18

---

19          [6] It should be noted again that Mr. Mason's declaration in this matter does not indicate

20  what an offender must do to exhaust administrative remedies after a grievance is deemed "non-

21  grievable."

22          [7] The fact that plaintiff may have filed grievances outside of the internal prison timelines

23  for filing grievances does not bar him from filing § 1983 claims regarding those issues.  In a recent

24  decision issued after briefing on this motion was completed, the Ninth Circuit held that a plaintiff's

25  § 1983 claims are not barred by the PLRA in cases where the plaintiff's grievances are filed

26  outside the timelines prescribed by an institution. *Ngo v. Woodford*, ___ F.3d ____, No. 03-16042

    (9th Cir. March 24, 2005).

          [8] Defendants have not introduced evidence that describes the appeal processes for

    disciplinary or classification actions.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -10

01  administrative levels.  I am therefore not inclined to take any action at this time." (Dkt. 65, Ex.
02  AA)

03          In short, prior to filing his complaint in this action plaintiff made significant attempts to
04  bring his claims to the attention of DOC officials (both through the OGP and other appeals) and
05  to provide them with an opportunity to remedy his complaints.  DOC officials had the opportunity
06  to consider and to respond to his complaints, and essentially responded that they would not
07  consider these issues again.  Against this backdrop, it appears that plaintiff has exhausted available
08  administrative remedies for the issues raised in his appeals to Mr. Mason and Mr. Fleming.  (Dkt.
09  65, Exs. Y-Z)

10  3.      "Total Exhaustion" Requirement

11          As noted above, defendants argue that under the PLRA, a § 1983 action by a prisoner must
12  be dismissed in its entirety if the plaintiff fails to exhaust available administrative remedies for even
13  one claim prior to the filing of the complaint.  Here, it appears that plaintiff failed to exhaust
14  administrative remedies prior to filing suit for his claim regarding the constitutionality of DOC
15  450.100.

16          Defendants point to decisions by other courts that have adopted this type of "total
17  exhaustion" rule under the PLRA.  Although the Ninth Circuit has not yet addressed this issue,
18  the total exhaustion rule has been adopted by the Tenth Circuit, while the Second Circuit has
19  rejected such a rule.[9]  *Compare Ross v. County of Bernalillo*, 365 F.3d 1181, 1188-90 (10th Cir.
20  2004) *with Ortiz v. McBride*, 380 F.3d 649, 655-62 (2d Cir. 2004).  District courts within the
21  Ninth Circuit have split on this issue.  *Compare, e.g.*, *Blackmon v. Crawford*, 305 F. Supp. 2d
22  1174 (D. Nev. 2004) (failure to exhaust all claims does not require dismissal of entire action), *with*
23

24  _____

25          [9] The Eighth Circuit has issued somewhat conflicting decisions on this issue, but now
    appears to allow a plaintiff whose complaint includes unexhausted claims to amend the complaint
26  to remove the unexhausted claims.  *Compare Kozohorsky v. Harmon*, 332 F.3d 1141 (8th Cir.
    2003), *with Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -11

01 *Thorp v. Kepoo*, 100 F. Supp. 2d 1258 (D. Haw. 2000) (entire action must be dismissed if all

02 claims not exhausted).  In recent months, several district courts within this circuit have applied a

03 total exhaustion rule. *See McClure v. Oregon Dep't of Corrections*, 2005 WL 425469 at *7 (D.

04 Or. Feb. 23, 2005); *Ornelas v. Giurbino*, ___ F. Supp. 2d ___, 2005 WL 469324 at *5 (S.D. Cal.

05 Feb. 14, 2005); *Mubarak v. California Dep't of Corrections* , 315 F. Supp. 2d 1057, 1059-61

06 (S.D. Cal. 2004).

07      A primary rationale for applying a total exhaustion rule stems from the fact that the PLRA

08 states that "no action" shall be brought until available administrative remedies are exhausted. *See*

09 42 U.S.C. § 1997e(a).  As the Tenth Circuit noted, "the language in § 1997e(a) itself suggests a

10 requirement of total exhaustion because it prohibits an "action" (as opposed to merely preventing

11 a "claim") from proceeding until administrative remedies are exhausted." *Ross*, 365 F.3d at 1190.

12 Courts have also found that a total exhaustion rule would promote judicial efficiency. *See, e.g.*,

13 *Thorp*, 100 F. Supp. 2d at 1263 (total exhaustion rule avoids "the inefficient result of permitting

14 actions to proceed in part while other claims remained to be tried only after they had been

15 exhausted"); *Ornelas v. Giurbino*, ___ F. Supp. 2d ___, 2005 WL 469324 at *5 (S.D. Cal. Feb.

16 14, 2005) (rule will result in "more focused complaints and more developed evidentiary records").

17      However, the Second Circuit in *Ortiz* found that the PLRA does not mandate dismissal of

18 the entire action in a "mixed" action containing both exhausted and unexhausted claims. The*Ortiz*

19 court noted:

20      Section 1997e(a) clearly instructs that an action . . . containing exhausted and
       unexhausted claims should not have been "brought."  But we do not think that it
21      follows that the only possible response to the impermissibility of the bringing of the
       action is to dismiss it in its entirety – to kill it rather than to cure it.  The statute does
22      not say so.

23 *Ortiz*, 380 F.3d at 657.  In addition, some courts have suggested that a total exhaustion rule would

24 not promote judicial efficiency, noting that a prisoner "would merely file a new suit alleging only

25 the exhausted claims" and that such a practice "would merely delay the resolution of claims that

26 are not frivolous and the increased filings would tend to increase rather than decrease the burden

01  on federal district courts." *Blackmon*, 305 F. Supp. 2d at 1179.

02       In this case, it is recommended that the Court decline to apply a total exhaustion rule that

03  would require dismissal of plaintiff's complaint in its entirety.  As the split in authority on this issue

04  indicates, the language of the PLRA does not plainly mandate dismissal of plaintiff's action in its

05  entirety, nor does Ninth Circuit precedent require such a result.  Few apparent judicial efficiencies

06  would be achieved by dismissal of the entire action, given that dismissal would be without

07  prejudice and plaintiff could simply refile his complaint after removing unexhausted claims.  In

08  addition, dismissal of plaintiff's complaint in its entirety could cause several of plaintiff's claims

09  to become time-barred under the three-year statute of limitations that applies to § 1983 actions

10  in Washington state.

11       To be sure, there can be no question in this case that plaintiff was repeatedly advised of

12  his need to exhaust administrative remedies prior to filing suit.  In       *Leeburg*, Judge Rafeedie

13  dismissed plaintiff's initial complaint with leave to amend in December 2002 for failure to exhaust

14  administrative remedies, and again dismissed his action in September 2003 for failure to exhaust.

15  Judge Rafeedie's order from September 2003 concluded by stating:

16       The Court stresses, as it did in its December 13, 2002 order dismissing Plaintiff's
         previous complaint for failure to exhaust administrative remedies, that if Plaintiff
17       chooses to resubmit his Complaint, Plaintiff should include only claims exhausted
         through the administrative process available to prisoners and include copies of final
18       grievance resolutions.

19  (Dkt 39, Ex. 1., Att. A)

20       However, as discussed earlier, it is apparent that plaintiff attempted to exhaust his

21  administrative remedies in the months prior to filing this complaint.  Although plaintiff is steadfast

22  in asserting that these "extra efforts" to exhaust his claims should have been unnecessary and that

23  *Leeburg* was unfairly dismissed, it does appear that plaintiff tried to ascertain what steps he needed

24  to take to complete the exhaustion of his claims.  It also appears that plaintiff had difficulty

25  ascertaining which issues were "grievable" (and thus had to be pursued through the OGP

26  grievance process) and which issues were "non-grievable" (and were thus outside the scope of the

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -13

01  OGP process).  Although plaintiff did not fully exhaust his claim regarding the constitutionality

02  of DOC 450.100 before filing his complaint, he had at least initiated the grievance process for this

03  claim prior to filing his complaint.

04         Under these circumstances, dismissal of the entire action would be a severe result,

05  particularly when dismissal of the entire action could have the consequence of causing some

06  exhausted claims to become time-barred.  Instead, it is recommended that plaintiff's unexhausted

07  claims regarding DOC 450.100 be dismissed, and that plaintiff be allowed to proceed with his

08  remaining claims to the extent they are not otherwise subject to dismissal.

09                      **B.  Statute of Limitations**

10         Defendants also argue that some of plaintiff's claims should be dismissed as time-barred.

11  "A statute of limitations defense may be raised by a motion to dismiss if the running of the

12  limitation period is apparent on the face of the complaint."  *Vaughan v. Grijalva*, 927 F.2d 476,

13  479 (9th Cir. 1991).  Here, plaintiff's claims are all brought under 42 U.S.C. § 1983.  In a §1983

14  action, federal courts apply the forum state's statute of limitations.  *Fink v. Shedler*, 192 F.3d 911,

15  914 (9th Cir. 1999).  The applicable statute of limitations for a §1983 claim in Washington state

16  is three years.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).  Federal

17  law governs when a §1983 claim accrues for statute of limitation purposes.  *Fink*, 192 F.3d at 914.

18  "A claim accrues when the plaintiff knows of, or should know, of the injury which is the basis of

19  the cause of action."  *Id.*

20         Plaintiff's *in forma pauperis* application and proposed complaint in this matter were filed

21  with the Court on July 19, 2004.  As such, defendants argue that any claims that accrued prior to

22  July 19, 2001 are barred by the statute of limitations.

23         Plaintiff argues that allegations in his complaint regarding events prior to July 19, 2001

24  "are properly included because they serve to establish a continuing violation, a pattern of conduct,

25  state of mind, motivation, knowledge, and intent, among other factors." (Dkt. 56, at 3)  However,

26  the continuing violation doctrine should not preserve claims that are based on discrete acts that

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -14

01 fall outside the applicable statute of limitations.  As the Ninth Circuit has noted, "[d]iscrete acts

02 are not actionable if time barred, even if related to acts alleged in timely filed charges."  *Cholla*

03 *Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004).  Although plaintiff alleges an

04 "ongoing campaign" of retaliatory acts against him, the acts alleged are capable of being broken

05 down into discrete events.  Indeed, plaintiff himself sorts the claims in his complaint into nine

06 separate issues in his opposition brief. (Dkt. 56, at 6-7)  As such, the continuing violation doctrine

07 does not preserve claims that accrued prior to July 19, 2001.[10]

08       Plaintiff also argues that the Court should measure the three-year statute of limitations

09 from the date he initially filed his action in *Clark v. Leeburg*.  Plaintiff alleges that this would be

10 the correct date because defendants allegedly "obtained unfair dismissal of [*Leeburg*] by way of

11 false testimony." (Dkt. 56, at 25)  Liberally construed, this argument appears to raise the question

12 of whether the equitable tolling doctrine should extend the statute of limitations.  It is plaintiff's

13 burden to show that equitable tolling is available.  *U.S. v. Marolf*, 173 F.3d 1213, 1218 n.3 (9th

14 Cir. 1999).  In a § 1983 action, a federal court looks to the law of the forum state to determine

15 if equitable tolling applies.  *Fink*, 192 F.3d at 914.  Under Washington law, "[e]quitable tolling is

16 generally used only sparingly, when the plaintiff exercises diligence and there is evidence of bad

17 faith, deception, or false assurances by the defendant."    *In re Carlstad*, 150 Wn.2d 583, 593

18 (2003).  Here, plaintiff has alleged that defendants used false testimony and deception to obtain

19 unfair dismissal of the *Leeburg* action.  However, as discussed above, plaintiff had the opportunity

20 at both the district court and appellate level in *Leeburg* to litigate whether defendants propounded

21 false evidence or arguments in that case.  Under collateral estoppel principles, he cannot relitigate

22 that issue here.  As such, equitable tolling should not be permitted.

23       Therefore, plaintiff's claims should be dismissed to the extent that they accrued before July

24

25     [10] However, plaintiff is not precluded by the statute of limitations from using these time-

26 barred acts "as evidence to establish motive and to put his timely-filed claims in context." *Carpinteria Valley Farms, Ltd v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003).

01  19, 2001.[11]  In addition, because plaintiff has not alleged that defendants Julia Garret or John

02  Austin committed any unlawful acts against him after July 19, 2001, claims against those

03  defendants should be time-barred.  Accordingly, defendants Garret and Austin should be dismissed

04  from this action.

05  ## C. Failure to State Claims for Constitutional Violations

06         In their opening brief, defendants argue that plaintiff has failed to allege deprivation of his

07  constitutional rights with respect to claims involving extended family visits (EFVs), parolability

08  determinations, transfers, possession of property, or disciplinary due process.  While defendants

09  acknowledge that plaintiff "primarily asserts retaliation claims," they argue that he also appears

10  to seek relief for allegations of violations of his First, Fourteenth, and Due Process rights

11  independently of his retaliation claims.  (Dkt. 39, at 15)

12         In his opposition brief, plaintiff seems to dispute that he is maintaining claims that are

13  independent of his retaliation claims.  He appears to maintain that his principal claim is that the

14  alleged denial of his First, Fourteenth, and Due Process rights were "part of, or were the result of,

15  [defendants'] on-going campaign of retaliation; there is no separation of the retaliatory acts and

16  the resulting injuries." (Dkt. 56, at 26)  Plaintiff's complaint is susceptible of such a construction.

17  Under this theory, plaintiff's complaint should be construed as alleging that defendants retaliated

18  against him at various times for engaging in protected conduct (*e.g.*, litigation activities), which

19  led in turn to a variety of derivative injuries (*e.g.*, denial of extended family visits, confiscation of

20  property, loss of privileges, etc.)  Construed in this manner, it is perhaps unnecessary to consider

21  defendants' argument that plaintiff's claims should be dismissed to the extent that plaintiff alleges

22  constitutional violations that are independent of the alleged retaliatory acts.  Indeed, defendants

23

24  _____

25         [11] The Court must provide a *pro se* plaintiff with notice of a complaint's deficiencies and
    an opportunity to amend defective claims, unless it is "absolutely clear that no amendment can

26  cure the defect."  *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).  Here, the
    defects noted above cannot be cured by amendment.

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -16

01  indicate in their reply brief that plaintiff's clarification on this point appears to render this argument

02  moot.  (Dkt. 62, at 7)   Nonetheless, defendants arguments are addressed briefly below for the

03  purposes of clarifying the Court's construction of plaintiff's claims and potential remedies.

04  1.   Extended Family Visits

05        Several of plaintiff's claims relate to the termination of extended family visits (EFVs) with

06  his daughter.  It is well-settled that a prisoner has no constitutional right to contact visits. *Gerber*

07  *v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002).  As such, the denial or revocation of such visits

08  standing alone ordinarily cannot give rise to a §1983 claim.  However, as defendants acknowledge,

09  it would be unlawful for defendants to deny EFV visits to plaintiff in retaliation for engaging in

10  protected activities.  (Dkt. 39, at 15)  Therefore, plaintiff's claim that his EFVs were revoked in

11  retaliation for protected activity (¶ 119(e)) states a cognizable claim.  To the extent that plaintiff

12  is maintaining that his EFVs were revoked as a result of non-retaliatory actions, however, such

13  claims would not be cognizable under § 1983.

14  2.   Parole Denials

15        Defendants argue that plaintiff's "claims relating to parolability decisions of the ISRB and

16  its consideration of information contained within DOC files, and/or provided by DOC should be

17  dismissed."  (Dkt. 39, at 19)  As discussed above, claims related to plaintiff's ISRB parolability

18  hearing in May 2000 should be dismissed on statute of limitations grounds, making it unnecessary

19  to consider whether these claims should be dismissed on other grounds.  However, it also appears

20  that plaintiff is maintaining that defendants have retaliated against him by manufacturing false

21  infractions for the purpose of "sabotaging" his parole hearings.  If plaintiff proves his retaliation

22  claims, a possible remedy would be to require DOC to correct information provided to the ISRB

23  regarding retaliatory acts.  As such, plaintiff should not be foreclosed from seeking such relief if

24  he is successful on his retaliation claims.

25  3.   Transfers

26        Defendants assert that plaintiff cannot maintain a cause of action based on a prison transfer

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -17

01  "no matter what the reason for the transfer may be."  (Dkt. 39, at 20)  However, it is well-

02  established that a prisoner cannot be transferred in retaliation for engaging in litigation activity.

03  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  In essence, that is what plaintiff has alleged

04  in his complaint.  *See* Complaint ¶ 119(g).  As such, plaintiff's retaliatory transfer claim is

05  cognizable.

06  4.    Lost or Destroyed Property

07         Defendants argue that plaintiff may not bring claims under § 1983 for the loss or

08  destruction of his property.  As the Ninth Circuit has noted, "a negligent or intentional deprivation

09  of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post-

10  deprivation remedy."  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).  Here, Washington

11  state has such a remedy for loss of property.  *See* RCW §§ 4.92.100-110.

12         However, to the extent that plaintiff is alleging that defendants have confiscated his

13  property in retaliation for engaging in protected activities, such claims would appear to be

14  cognizable in a § 1983 action.  *See Rhodes v. Robinson*, 380 F.3d 1123, 1128-29 (9th Cir. 2004).

15  Therefore, plaintiff may seek relief in this case for loss of property to the extent that his property

16  was lost or destroyed in retaliation for engaging in protected activities.

17  5.    Disciplinary Sanctions

18         Defendants also argue that plaintiff may not challenge the findings of guilt resulting from

19  various disciplinary hearings on plaintiff's alleged infractions.  Defendants suggest that plaintiff

20  "must first challenge these hearings in a personal restraint petition and receive favorable

21  termination" before he can bring a § 1983 claim.  (Dkt. 39, at 21)  However, plaintiff is not

22  challenging his underlying criminal conviction in this action, nor does it appear that he alleging that

23  he lost good-time credits as a result of the disciplinary hearings.  As such, the cases that

24  defendants cite in support of their argument ( *Heck v. Humphrey* , 512 U.S. 477 (1994) and

25  *Edwards v. Balisok*, 520 U.S. 641 (1997)) are not on point.  If successful on his claims, the fact

26  or length of plaintiff's confinement would not necessarily be altered. As such, plaintiff may bring

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -18

01 his claims under § 1983 and need not successfully obtain habeas corpus relief first. *See Ramierz*

02 *v. Galaza*, 334 F.3d 850, 854-59 (9th Cir. 2003).

03 **D. Immunity**

04       Finally, defendants argue: (1) that defendants who work for the Department of Corrections

05 are entitled to qualified immunity from suit; and (2) defendants who are members of the

06 Indeterminate Sentencing Review Board (ISRB) are entitled to absolute quasi-judicial immunity.

07       Qualified immunity "serves to shield government officials 'from liability for civil damages

08 insofar as their conduct does not violate clearly established statutory or constitutional rights of

09 which a reasonable person would have known.'" *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir.

10 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 900 (1982)). The Ninth Circuit has stated:

11     In ruling on a qualified immunity defense, a court must consider two questions. First,
12     "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . . Second, if the plaintiff has alleged a deprivation of a constitutional right a court "is to ask whether
13     the right was clearly established."

14 *Sorrels,* 290 F.3d at 969 (internal citations omitted).

15       Construed in the light most favorable to plaintiff, the facts alleged in plaintiff's complaint

16 would show that the DOC defendants engaged in retaliatory acts against him due to his litigation

17 activities. Such retaliatory acts would violate plaintiff's clearly established constitutional rights.

18 The prohibition against retaliatory conduct based on an inmate's litigation activities has been

19 clearly established law in the Ninth Circuit for many years. *See Pratt v. Rowland*, 65 F.3d 802,

20 806 (9th Cir. 1995) ("the prohibition against retaliatory punishment is 'clearly established law' in

21 the Ninth Circuit, for qualified immunity purposes.") It appears that plaintiff's complaint alleges

22 that all DOC defendants have retaliated against him for engaging in protected activities.

23 Therefore, defendants have not made a showing that the DOC defendants should be entitled to

24 qualified immunity for plaintiff's retaliation claims.

25       Defendants also argue that defendants Julia Garrett and John Austin are entitled to

26 absolute quasi-judicial immunity. As discussed above, claims against these defendants should be

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -19

01 barred by the statute of limitations and these defendants should be dismissed from the action.  As

02 such, it is not necessary to determine whether they are also entitled to immunity.

03                                                    **Conclusion**

04          Consistent with the discussion above, it is recommended that defendants' motion to dismiss

05 be granted in part and denied in part.  Specifically, defendants' motion should be granted to the

06 extent that defendants seek dismissal of claims that accrued before July 19, 2001 on statute of

07 limitations grounds.  Defendants Julia Garrett and John Austin should be dismissed from this

08 action because no claims are alleged against them for injuries that accrued after July 19, 2001.

09 Plaintiff's claims regarding the constitutionality of DOC 450.100 should also be dismissed without

10 prejudice for failure to exhaust available administrative remedies before the complaint was filed.

11 A proposed Order accompanies this report and recommendation.

12          DATED this  30th  day of March, 2005.

13                                                    s/ Mary Alice Theiler
                                                      United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS
PAGE -20