01

02

03

04             UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
05                    AT SEATTLE

06 MARK WAYNE CLARK,                    )    CASE NO. C04-1647-JCC
                                        )
07        Plaintiff,                    )
                                        )    REPORT AND RECOMMENDATION
08   v.                                 )    ON DEFENDANTS' MOTION FOR
                                        )    SUMMARY JUDGMENT
09 DEAN MASON, et al.,                  )
                                        )
10        Defendants.                   )
   _____ )

11

12         Plaintiff is an inmate in the custody of the Washington Department of Corrections

13 ("DOC"). Proceeding *pro se* and *in forma pauperis*, plaintiff has filed a civil rights action

14 pursuant to 42 U.S.C. § 1983. Defendants have filed a motion for summary judgment. (Dkt.

15 #208). Plaintiff has filed a response to the motion and defendants have filed a reply. (Dkt. ##252,

16 256). Having considered the papers and pleadings submitted by the parties, it is recommended

17 that defendants' motion be construed as a motion for partial summary judgment, and so construed,

18 the motion be GRANTED.

19                              **I. Background**

20         The procedural history of this case is lengthy and was summarized by the Court in a

21 previous Report and Recommendation ("R&R"), issued on March 31, 2005, which addressed

22 defendants' motion to dismiss. (Dkt. #90). That history will not be repeated here. Nor will the

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -1

01 Court attempt to summarize the facts underlying this lawsuit, except in the context of each claim,

02 as discussed below.  In essence, plaintiff alleges that DOC officials and employees have engaged

03 in a campaign of retaliation against him due to his prior success in several lawsuits against prison

04 officials.

05      In the previous R&R, the Court outlined four broad causes of action that plaintiff raised

06 in his original complaint, filed on July 19, 2004[1]:

07     (1)    Denial of plaintiff's right to freedom of expression in violation of the First and

08         Fourteenth Amendments (Dkt. #6, ¶ 118);

09     (2)    Retaliatory actions in violation of the First and Fourteenth Amendments ( *Id.*, ¶

10         119);

11     (3)    Denial of due process in violation of the Fourteenth Amendment (*Id.,* ¶ 120); and

12     (4)    Denial of plaintiff's property and liberty interests (*Id.*, ¶ 121).

13      After examining the claims and numerous exhibits submitted by the parties, the Court

14 recommended that certain claims be dismissed and other claims be limited in scope.  Specifically,

15 the Court recommended that all claims be dismissed that (1) accrued before July 19, 2001; (2)

16 challenged the constitutionality of the DOC rule (Policy Directive 450.100) prohibiting sexually

17 explicit material; or (3) involved a host of issues (the denial of visitation rights, parole, transfer to

18 another prison, loss of property, or imposition of disciplinary sanctions), unless such claims were

19 part of plaintiff's general retaliation claim.  (Dkt. #90 at 16-20).  The District Court adopted these

20 recommendations in an Order issued on May 19, 2005.  (Dkt. #96).

21 _____

22     [1] For the sake of simplicity, when the Court analyzes these four broad claims below, they will be discussed in a slightly different order.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -2

01       Plaintiff filed a supplemental complaint, alleging additional retaliatory acts and adding new

02 defendants, on August 4, 2005. (Dkt. #112).  After a lengthy period of discovery, defendants filed

03 the instant motion for summary judgment on December 13, 2006.  (Dkt. #208).  After receiving

04 several extensions of time, plaintiff filed his response on April 10, 2007. (Dkt. #252).  Defendants

05 received an extension of time as well and filed their reply on April 25, 2007. (Dkt. #256).  The

06 matter is now ready for review.

## II.  Analysis

08       Summary judgment is proper only where "the pleadings, depositions, answers to

09 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

10 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

11 of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The

12 court must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v.*

13 *O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

14 (1994).

15       The moving party has the burden of demonstrating the absence of a genuine issue of

16 material fact for trial.  *See Anderson*, 477 U.S. at 257.  "When the moving party has carried its

17 burden under Rule 56(c), its opponent must do more than simply show that there is some

18 metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead

19 a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*

20 *v. Harris*, __U.S.__, 127 S. Ct. 1769, 1776 (2007) (internal citation and quotation omitted).

21 Conclusory allegations in legal memoranda are not evidence, and cannot by themselves create a

22 genuine issue of material fact where none would otherwise exist. *See Project Release v. Prevost,*

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -3

722 F.2d 960, 969 (2nd Cir. 1983).

In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.   *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the Complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

A.  Independent Claims

As previously indicated, the bulk of plaintiff's claims are based on his theory that defendants have engaged in a campaign of retaliation against him.  In addition, however, plaintiff attempts to raise several non-retaliatory claims of constitutional violations.  The Court previously has limited the scope of these independent claims.  (Dkt. #90).  Defendants argue in their motion for summary judgment that to the extent that these claims have survived to this stage of the litigation, plaintiff cannot show that they present a genuine issue of material fact, and should therefore be dismissed.  The Court addresses each claim in turn.

1.    Denial of First Amendment Right to Freedom of Expression

It is undisputed that on many occasions during his incarceration, prison officials have seized artwork or clippings from plaintiff's cell and subjected him to disciplinary proceedings for having sexually explicit material in his cell.  Under the relevant prison regulations, plaintiff is prohibited from receiving in the mail or possessing artwork that depicts a minor or someone who appears to be a minor, in a sexually suggestive way.  (Dkt. #208, Ex. 3, Attachment QQ).  In

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -4

01  addition, the regulations were amended in 2004 to also prohibit possession of artwork that depicts

02  full frontal nudity.  (*Id.*, Attachment RR).

03       It is also undisputed that none of the artwork in question is part of the record currently

04  before the Court.[2]  (Dkt. #208 at 15-16).  It appears that it has either been lost or destroyed.

05  Indeed, plaintiff alleges that defendants have destroyed his work in retaliation for his litigation

06  activities.  (Dkt. #6 at ¶ 121(a)).

07       The Court has already ruled that plaintiff may not challenge the constitutionality of the

08  prison regulation banning the possession of sexually explicit material.[3]  (Dkt. #96 at 2).  Given that

09  the regulation's constitutionality is unquestioned, it appears that plaintiff's sole First Amendment

10  challenge, based upon the confiscation of his artwork, is an "as-applied" challenge to the actions

11  of defendants who seized his artwork pursuant to the regulations.  *See Hargis v. Foster*, 282 F.3d

12  1154, 1157-58 (9th Cir. 2002) (prisoner may challenge whether his or her speech fits within

13  regulation in question).  However, because the Court is unable to actually review any of the

14  artwork in question, the Court is unable to determine whether defendants properly applied their

15  own regulations.  *See Pepperling v. Crist*, 678 F.2d 787, 791 (9th Cir. 1982) (a court cannot,

16  _____

17       [2] Defendants filed exhibits under seal (Dkt. #208, Ex. 1) that they present as samples of
    plaintiff's artwork, but which they admit were not the subject of any of the infractions discussed
18  herein.  (Dkt. #208 at 15).  Plaintiff does not dispute defendants' statement that "none of the
    original pictures associated with any of these events are available to Defendants. . . ."  (*Id.*).

19       [3] Even if plaintiff were to challenge the constitutionality of the regulation, this Court has
    already upheld its validity.  *See Powell v. Riveland*, 991 F. Supp. 1249, 1254 (W.D. Wash. 1997)
20  (upholding constitutionality of DOC Policy 450.100);  *see also Mauro v. Arpaio*, 188 F.3d 1054
    (9th Cir. 1999) (en banc) (holding that a similar Arizona regulation prohibiting prisoners from
21  possessing sexually explicit material did not violate the Constitution).  Indeed, plaintiff himself has
    already challenged this regulation in this Court and his challenge was rejected.  *See Clark v.*
22  *Lehman*, Case No. C97-761-WD (Dkt. #117, Order adopting Report and Recommendation).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -5

01  without close examination of the material in question, determine whether its prohibition violates

02  First Amendment).  Therefore, plaintiff has failed to satisfy his burden of showing a genuine issue

03  of fact regarding his First Amendment claim, and defendants' motion for summary judgment

04  should be granted as to this claim.

05           2.    Denial of Fourteenth Amendment Right to Due Process

06           Plaintiff's original and supplemental complaints both contain claims that his federal due

07  process rights were violated by numerous actions taken by defendants.  (Dkt. #6 at 22-23; Dkt.

08  #112 at 19).  However, the Court limited the scope of plaintiff's due process claims in the

09  previously issued R&R that addressed defendants' motion to dismiss.  (Dkt. #90 at 16-19).  In that

10  R&R, the Court concluded that many of plaintiff's due process claims were not cognizable as

11  independent claims, separate from his claims of retaliation.  The Court observed that plaintiff

12  himself had conceded this point in stating that his principal claim is that the due process violations

13  were part of an "on-going campaign of retaliation . . . ."  (Dkt. #56 at 26).

14           Nonetheless, defendants argue in their motion for summary judgment that "the Court left

15  open the possibility of [independent] due process challenges for Mr. Clark's disciplinary hearings"

16  and his classification reports.  (Dkt. #208 at 22-23).  Defendants proceed to argue that plaintiff

17  has failed to state a due process claim with regard to his disciplinary hearings because he did not

18  suffer any loss of good time credit as a result of these hearings.  Because he did not lose any good

19  time credits, defendants maintain, plaintiff did not suffer an "atypical and significant hardship," as

20  a result of the disciplinary hearings.  Such a showing is a required element of a liberty-based due

21  process claim.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Defendants also contend that

22  classification decisions by prison officials similarly cannot form the basis of a due process violation

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -6

01  because the classification of a prisoner is merely an incident of prison life.

02       It is unclear whether plaintiff considers his due process claims to be independent of his

03  retaliation claims.  Plaintiff did not address defendants' argument in his response to the motion for

04  summary judgment.  Instead, on the last page of his response, plaintiff acknowledges that he ran

05  out of time and could not include any argument in support of these claims.  (Dkt. #252 at 75).  His

06  later attempt to file a supplemental response that addressed the due process argument was ordered

07  stricken as untimely by the Court.  (Dkt. #255).  However, the Court notes that at the end of his

08  response, plaintiff stated that "THE *RETALIATORY* ACTIONS OF THE DEFENDANTS

09  DENIED PLAINTIFF OF HIS RIGHT TO DUE PROCESS OF LAW. . . . ."  (Dkt. #252 at 75)

10  (original in capital letters; emphasis added).  Thus, it appears that plaintiff considers his due

11  process claims to be inextricably linked to his claims of retaliation.

12       To the extent that plaintiff may consider his due process claims independent of his

13  retaliation claims, defendants' argument based upon *Sandin* appears correct.  Without any loss of

14  good time credit, disciplinary hearings do not pose an atypical and significant hardship sufficient

15  to trigger due process protections.  For the same reason, mere classification decisions fail to rise

16  to the level of a due process claim.  *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007)

17  (prison regulations governing inmate classification did not create cognizable Eighth or Fourteenth

18  Amendment liberty interests).  Accordingly, plaintiff has failed to satisfy his burden of showing a

19  genuine issue of fact regarding his due process claims, and defendants' motion for summary

20  judgment should be granted as to this claim.[4]

21  _____

22       [4] The Court notes that plaintiff attempts in his supplemental complaint to raise issues under
the rubric of a due process violation that do not properly belong to that category of claims.  (Dkt.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -7

01        3.        Denial of Plaintiff's Property and Liberty Interests under Due Process Clause

02        As stated above, the Court limited the scope of plaintiff's claims related to property or

03 liberty interests in the previous R&R.  (Dkt. #90 at 16-19).  The Court relied upon Ninth Circuit

04 precedent, which holds that "a negligent or intentional deprivation of a prisoner's property fails

05 to state a claim under section 1983 if the state has an adequate post deprivation remedy." *Barnett*

06 *v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).  Because Washington state has such a remedy for

07 loss of property – RCW §§ 4.92.100-110 – the Court recommended that plaintiff's claims related

08 to loss of property be limited to his claim that defendants destroyed his property in retaliation for

09 his protected activities.  (Dkt. #90 at 18).

10        The Court declines to revisit this issue and plaintiff has offered no reason why the Court

11 should reconsider its prior conclusion.  Accordingly, plaintiff has failed to satisfy his burden of

12 showing a genuine issue of fact regarding his due process claim related to loss of property, and

13 defendants' motion for summary judgment should be granted as to this claim.  In addition, to the

14 extent that plaintiff attempts to include harm to any purported "liberty" interest under this claim,

15 such claims are subsumed within plaintiff's retaliation claims, discussed below.

16                        B.  Retaliation Claims

17        As mentioned, the bulk of plaintiff's claims are based upon his principal allegation that

18 DOC officials have engaged in an "on-going campaign of retaliation" against him and that "there

19

20 #112 at ¶ 60(a)-(c)).  The first of these purported due process claims is against two members of
   the Indeterminate Sentence Review Board – John Austin and Julia Garret – who have been
21 dismissed as defendants from this lawsuit.  (Dkt. #109).  The second is more properly considered
   an act of retaliation than a due process violation, and the third pertains to plaintiff's alleged loss
22 of property, which is discussed below.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -8

01  is no separation of the retaliatory acts and the resulting injuries."[5]  (Dkt. #56 at 26).  As noted in

02  the previously issued R&R, these retaliatory acts fall into multiple categories.  After stating the

03  applicable standard governing retaliation claims, the Court will address each claim in turn.

04  <u>Standard Governing Retaliation Claims</u>

05  To state a claim based upon retaliation, a prisoner must allege that (1) the type of activity

06  he was engaged in was protected; (2) prison officials impermissibly infringed on his right to engage

07  in the protected activity, *i.e.*, they acted in a retaliatory manner; and (3) prison officials' retaliatory

08  action served no legitimate penological interest.  *See Rizzo v. Dawson,* 778 F.2d 527, 531-32 (9th

09  Cir. 1985).  In *Rizzo*, the Ninth Circuit emphasized that for a prisoner to state a cause of action

10  based upon retaliation, he "must do more than allege retaliation. . . he must also allege that the

11  prison authorities' retaliatory action did not advance legitimate goals of the correctional institution

12  or was not tailored narrowly enough to achieve such goals." *Id.* at 532.  Thus, in order to survive

13  summary judgment, the plaintiff bears the burden of showing that there was no legitimate

14  penological objective to defendants' actions.  *See Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.

15  1995).

16  In addition, the Ninth Circuit has cautioned that retaliation claims brought by prisoners

17  must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison

18  _____

19  [5] The distinction between plaintiff's retaliation claims and his free-standing claims asserting
other constitutional violations is often difficult to discern in plaintiff's pleadings.  For example, in
20  his response to defendants' motion for summary judgment, plaintiff divides his argument into First
Amendment claims (Dkt. #252 at 41) and retaliation claims.  (*Id.* at 51).  However, plaintiff
21  discusses identical infractions under both headings and a close reading of his arguments in each
section shows that plaintiff's theory of retaliation permeates almost all his claims.  Therefore,
22  unless otherwise specified, the Court's analysis of the remainder of plaintiff's claims presumes
them to be based upon a theory of retaliation.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -9

01  management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'"

02  *Pratt,* 65 F.3d at 807 (quoting *Sandin v. Conner,* 515 U.S. 472, 482 (1995)).  In particular, courts

03  should "'afford appropriate deference and flexibility' to prison officials in the evaluation of

04  proffered legitimate penological reasons for conduct alleged to be retaliatory."    *Id.* (quoting

05  *Sandin,* 515 U.S. at 482).  "[F]ederal courts must remember that the duty to protect inmates'

06  constitutional rights does not confer the power to manage prisons or the capacity to second-guess

07  prison administrators, for which we are ill-equipped."  *Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th

08  Cir. 2003).

09      Against this deferential standard, the Court will examine plaintiff's claims that defendants

10  retaliated against him in myriad ways.

11      1.    Extended Family Visits

12      On July 2, 2001, two corrections officers searched plaintiff's cell and found what was later

13  described by a third officer as "a large collection of pornographic material."  (Dkt. #208, Ex. 3,

14  Attachment H).  In addition, they found a photograph of a young girl and several nude drawings

15  apparently based upon the photograph.  ( *Id.*)  The identity of the girl was confirmed to be

16  plaintiff's minor daughter, with whom he had been having "extended family visits" ("EFVs") in

17  prison, which apparently means unsupervised contact visits. (*Id.*)

18      A hearing officer found that the confiscated material did not violate the prison's ban on

19  sexually explicit material and imposed no sanction for the infraction. ( *Id.*, Attachment F).

20  However, concerned about the safety of plaintiff's daughter, prison officials suspended plaintiff's

21  visits with his daughter and referred the matter to the state Child Protective Services ("CPS")

22  agency for further investigation.  (*Id.*, Attachment G).  On August 21, 2001, a social worker at

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -10

01   CPS wrote the prison that she had completed her investigation and "would recommend that

02   [plaintiff's] visitation with the child occur out in the open where it can be observed by prison

03   personnel." (*Id.*, Attachment I).  Prison officials subsequently cancelled plaintiff's EFVs with his

04   daughter and encouraged plaintiff "to maintain family ties through other means." (*Id.*, Attachment

05   K).

06        Plaintiff alleges that his EFVs with his daughter were cancelled in retaliation for his

07   protected activities, *i.e.*, his artwork and his prior litigation against DOC officials.[6]  In particular,

08   plaintiff argues that by providing CPS with a copy of the nude drawings of his daughter,

09   defendants violated a Washington regulation that strictly limits the use of records pertaining to

10   disciplinary charges that have been dismissed.[7]  Defendants reply that plaintiff reads the regulation

11   too broadly as prohibiting all uses of any document associated with a dismissed charge.  (Dkt.

12   #208 at 27).  They maintain that providing CPS with copies of his drawings was not prohibited

13   and was rather a valid measure taken to protect a member of the public (plaintiff's daughter) from

14   an inmate in their custody.  Such a goal, defendants assert, is "unquestionably a legitimate

15

16   [6] To the extent that plaintiff contends that the cancellation of his EFVs constitutes a
     separate claim independent of retaliation, the Court precluded such an argument in its Order

17   adopting the previous R&R. (Dkt. #96).  *See Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir.
     2002) (prisoners have no constitutional right while incarcerated to contact visits or conjugal

18   visits).

19   [7] The regulation provides in its entirety as follows:

20   "137-28-330. Finding of not guilty.
     If the hearing officer determines that the inmate is not guilty of all charged infractions,

21   disciplinary sanctions shall not be imposed on the inmate and *all records pertaining to the
     charge(s) shall not be placed in the inmate's central file but may be retained for

22   statistical, litigation, and recordkeeping purposes*."
     WAC 137-28-330 (emphasis added).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -11

01 penological interest." (*Id.*).

02       The Court finds that plaintiff has not met his burden of showing that there was no

03 legitimate penological objective to defendants' actions. *See Pratt v. Rowland,* 65 F.3d 802, 806

04 (9th Cir. 1995). The fact that the CPS social worker recommended that plaintiff's EFVs be

05 curtailed gives weight to prison officials' concern about the nude drawings of plaintiff's daughter.

06 Plaintiff argues in his reply that defendants can point to no reports of inappropriate behavior

07 between him and his daughter and that CPS therefore had no grounds to "interfere in the matter."

08 (Dkt. #252 at 44, n.15). However, such an absence of wrongdoing on his part does not establish,

09 nor even suggest, that defendants were acting to punish him when they referred the matter to CPS

10 for further investigation. Defendants were entitled, based upon plaintiff's nude drawings of his

11 daughter, to seek expert advice on whether to adopt measures to prevent wrongdoing. In sum,

12 plaintiff offers no evidence to show that defendants' actions regarding his EFVs were retaliatory

13 in nature. Therefore, plaintiff has failed to satisfy his burden of showing a genuine issue of fact

14 regarding the termination of his EFVs and defendants' motion for summary judgment should be

15 granted as to this claim.

16       2.   <u>Disciplinary Hearings</u>

17       Plaintiff alleges that defendants retaliated against him by repeatedly bringing baseless

18 disciplinary charges against him. The Court addresses each in turn.

19 / / /

20 / / /

21 / / /

22 / / /

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -12

01                a.        May 7, 2002 Infraction[8]

02        On May 7, 2002, corrections officers searched plaintiff's cell and found a drawing they

03   described as depicting a nude adult male with "his semi erect long penis draped over the shoulder"

04   of a nude female who appeared to be a minor. (Dkt. #208, Ex. 3, Attachment L). The drawing

05   is not part of the record before the Court. Plaintiff was accused of violating the prison's

06   prohibition against the possession of sexually explicit material. ( *Id*., Attachment QQ). At the

07   disciplinary hearing on the infraction, plaintiff testified that the drawing in question was based

08   upon a photograph from Penthouse magazine, for which he once had an authorized subscription,

09   and that the female was "supposed to be in a state of admiration." (*Id*., Attachment M). The

10   hearing officer found plaintiff guilty of the infraction and recommended that plaintiff lose his "in-

11   cell curio permit," which enabled him to create artwork in his cell, for thirty days. (*Id*.)

12        Plaintiff asserts that both the search and the guilty finding were prompted by retaliatory

13   motives.[9] (Dkt. #252 at 47-48). First, plaintiff contends that a corrections official named Gerrald

14   Proctor became angry when he learned that plaintiff planned to sue Proctor's wife, another

15   corrections official named Patricia Proctor, for her role in the termination of plaintiff's EFVs with

16   his daughter. (*Id*. at 47). Plaintiff alleges that Gerrald Proctor "initiated" the cell search on May

17   7, 2002, that resulted in the confiscation of the drawing. (*Id*.) Second, plaintiff maintains that the

18   _____

19        [8] Defendants mistakenly refer to this infraction as having occurred on May 16, 2002. (Dkt.
     #208 at 28). However, the record reveals that the actual date of the infraction was May 7, 2002.

20   (Dkt. #208, Ex. 3, Attachment L). The *hearing* on the infraction occurred on May 16, 2002. (*Id*.,
     Attachment M).

21        [9] Plaintiff mistakenly refers to the hearing date as "4/17/02" (Dkt. #252 at 47, 60);
     however, as mentioned, the record shows that the actual date of the hearing was May 16, 2002.

22   (Dkt. #208, Ex. 3, Attachment M).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -13

01  same drawing had previously been seized on July 2, 2001 and found not to be sexually explicit.

02  Plaintiff argues that the hearing officer reached a contrary conclusion on May 16, 2002, the second

03  time the drawing was seized, because of improper influence by defendant Michael Williams.  (*Id*.)

04  Finally, plaintiff asserts that the hearing officer admitted during his deposition that, contrary to his

05  earlier finding, the officer would *not* consider the female in the drawing to be a minor.  (*Id*. at 48).

06          The Court notes as an initial matter that plaintiff's citations to the record are difficult to

07  find amidst the sheaf of documents filed by plaintiff.  First, plaintiff did not file his exhibits in

08  numerical order.[10]  Therefore, the Court must look throughout all the exhibits in order to find one.

09  For example, the hearing officer's deposition, Exhibit 63, is to be found sandwiched between

10  Exhibit 55 and Exhibit 73. (Dkt. #252).  Second, plaintiff does not cite directly to the appropriate

11  exhibit or deposition, but rather to paragraphs within his own 82-page declaration.  (Dkt. #253).

12  These paragraphs, in turn, refer to a particular exhibit that contains the applicable deposition.

13  Thus, to locate a citation, the Court must first find the cited paragraph within plaintiff's

14  declaration, then locate in that paragraph plaintiff's reference to the appropriate exhibit, then find

15  the exhibit and locate the cited page within the exhibit.  Finally, because the exhibits lack line

16  numbers, the Court must review the entire single-spaced page of an exhibit to locate the portion

17  quoted by plaintiff.  This time-consuming exercise of verifying plaintiff's citations to the record

18  tests the limits of the Court's patience and were it not for plaintiff's *pro se* status, the Court would

19

20          [10] The fact that plaintiff's exhibits are not in numerical order is apparently the result of a
    last-minute dispute between plaintiff and prison staff, which led to the exhibits being prepared and
21  then filed in two separate groups. (Dkt. #250).  However, even assuming that plaintiff was not
    at fault for this dispute, this does not explain why, as discussed below, plaintiff did not adopt other
22  measures that would have made his citations easier to find.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -14

01 have stricken his declaration and exhibits as an improper strain on the Court's time and resources.

02 *See Forsberg v. Pacific Bell Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (district court is not

03 obliged to search through depositions to discern factual support for plaintiff's claims).

04        In any event, having tracked down plaintiff's citations to the record, the Court finds that

05 they do not support his allegations of retaliatory motive.  He offers no evidence to show that

06 either defendant Proctor or defendant Williams acted as he suggests to initiate the cell search or

07 influence its outcome.  In addition, plaintiff's assertion that the hearing officer has recently

08 changed his mind regarding whether the female appears to be a child is also unsubstantiated.  In

09 fact, the page of the hearing officer's deposition cited by plaintiff contains a comment by the

10 officer that reaffirms his prior conclusion that the female appeared to be a minor.  (Dkt. #252, Ex.

11 63 at 8).  Thus, plaintiff has failed to satisfy his burden of showing a genuine issue of fact

12 regarding the infraction of May 7, 2002 and defendants' motion for summary judgment should be

13 granted as to this claim.

14        b.   <u>June 26, 2002 Infraction</u>

15        On June 26, 2002, corrections officers found various items, including "photos and

16 drawings depicting bondage and torture," in plaintiff's cell. (Dkt. #208, Ex. 3, Attachment P). The

17 items appeared to violate the prison regulation prohibiting the possession of sexually explicit

18 material.  After a hearing, plaintiff was found guilty of violating the regulation, and his appeal

19 thereafter was denied.  (*Id.*, Attachment Q).

20        Plaintiff concedes in his original complaint that he was in possession of a 200-page book

21 that had a single page which, unbeknownst to plaintiff, contained an image depicting bondage.

22 (Dkt. #6 at 12). Plaintiff repeats this concession in his response to defendants' summary judgment

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -15

01  motion. (Dkt. #252 at 61). However, plaintiff argues that he should have been found guilty of

02  a minor, as opposed to a major, infraction due to the mitigating circumstances, and that the failure

03  to do so, as well as some procedural defects in his hearing, are evidence of retaliation. (*Id.*)

04  Defendants argue, among other things, that "one picture of bondage was sufficient for a

05  guilty finding." (Dkt. #208 at 29). Defendants concede that the hearing officer, defendant

06  Alstedt, appears to have misunderstood the meaning of the term "mitigating." (*Id.*) However,

07  defendants maintain that, at worst, this is evidence of negligence on the hearing officer's part, and

08  not retaliation. Defendants point out that negligence is not actionable as a constitutional violation

09  *See Davidson v. Cannon*, 474 U.S. 344, (1986).

10  The Court finds that plaintiff's assertion that the hearing officer had retaliatory motives in

11  finding him guilty of a major, instead of a minor, infraction, is speculative. Moreover, because

12  plaintiff does not dispute the actual basis for the finding of guilt – that a single image of bondage

13  was in his possession – plaintiff does not carry his burden of showing that there was no legitimate

14  penological objective to the hearing officer's actions. *See Pratt v. Rowland,* 65 F.3d 802, 806 (9th

15  Cir. 1995). Accordingly, plaintiff has failed to satisfy his burden of showing a genuine issue of fact

16  regarding the infraction of June 26, 2002 and defendants' motion for summary judgment should

17  be granted as to this claim.

18      c.      October 16, 2002 Infraction

19  On October 16, 2002, a cell search by corrections officers led to the confiscation of

20  photographs and drawings belonging to plaintiff that appeared to depict "minor females in various

21

22

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -16

01  stages of undress."[11]  (Dkt. #208, Ex. 3, Attachment R).  Plaintiff argued at his hearing that the

02  material was not sexually suggestive and had previously been confiscated and returned to him.

03  (*Id.*, Attachment S).  The hearing officer found him guilty after concluding that the evidence

04  depicted "nudity of minor females."  (*Id.*)  Plaintiff's appeal was denied.  (*Id.*, Attachment T).

05        Plaintiff argues that the hearing officer's finding of guilt and the denial of his appeal were

06  based upon retaliatory motives.  (Dkt. #252 at 48).  To support his argument, plaintiff cites to a

07  deposition of the official who denied the appeal in question, defendant Willie Daigle.  Plaintiff

08  asserts that Daigle admits in the deposition that "plaintiff should not have been found guilty for

09  possessing depiction of nude minors that were not sexually suggestive."  (*Id.*)  Plaintiff also argues

10  that the hearing officer's finding of guilt was unfounded because the officer stated only that the

11  evidence depicted nude female minors, but did not state that the minors were depicted in a sexually

12  suggestive manner.  (Dkt. #208, Ex. 3, Attachment S).

13        Plaintiff's allegations of retaliatory motive are not supported by the record.  Contrary to

14  his assertion that Daigle recanted his view that plaintiff had violated the prison's prohibition on

15  sexually explicit material, Daigle's deposition is consistent with his earlier finding upholding the

16  infraction.  For example, Daigle testified that "[b]ased on the information, we felt that it was

17  sexually explicit of minors, of minor females." (Dkt. #252, Ex. 101 at 25).  While plaintiff is

18  correct that the hearing officer did not state that the drawings or photographs were "sexually

19  explicit," plaintiff offers no evidence to show that this omission was more than a mere oversight

20  _____

21        [11] Plaintiff asserts that the officers also confiscated drawings and photographs worth almost
    $5,000, which did not violate DOC regulations but were never returned to him. (Dkt. #252 at 49;

22  Ex. 117).  This assertion will be discussed below in the section addressing plaintiff's claim for lost
    property.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -17

01   on the officer's part.  The Court declines to infer a retaliatory motive from such an omission.

02   Accordingly, plaintiff has failed to satisfy his burden of showing a genuine issue of fact regarding

03   the infraction of October 16, 2002 and defendants' motion for summary judgment should be

04   granted as to this claim.

05         d.      November 23, 2002 Infraction

06         On November 23, 2002, corrections officers searched plaintiff's cell and found various

07   drawings and art supplies.  (Dkt. #208, Ex.3, Attachment U).  At the time, plaintiff had been

08   serving a 90-day suspension of his in-cell hobby privileges, a sanction imposed for the infraction

09   of October 16, 2002.  (*Id.*, Attachment S).  Thus, plaintiff was charged with failing to comply with

10   his loss-of-privileges sanction.

11         Plaintiff argues that this infraction violated his First Amendment right of freedom of

12   expression.  As he puts it: "It is the First Amendment that gives the Plaintiff the right to draw and

13   to possess his artwork, not a DOC curio permit."  (Dkt. #252 at 51).  Plaintiff further contends

14   that this argument prevailed in a previous lawsuit,  *Clark v. O'Conner*, Case No. C92-479-CI

15   (E.D. Wash.), in which a jury found that a prison official had violated plaintiff's First Amendment

16   rights when the official told plaintiff he could not draw while serving a similar loss-of-privileges

17   sanction.  (*Id.*)  Finally, plaintiff asserts that defendant Williams conceded in a deposition that

18   plaintiff should not have been found guilty of this infraction.  (*Id.* at 50-51).

19         Defendants respond that the decision in *Clark v. O'Conner* is distinguishable because the

20   officer's comment to plaintiff in that case was that plaintiff "could not draw at all," whereas here,

21

22

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -18

01   plaintiff's loss of privileges were limited to 90 days.  (Dkt. #208, Ex. 2, Attachment A at 3).[12]

02        Plaintiff's argument is unavailing for several reasons.  First, plaintiff does not ascribe any

03   retaliatory motive to the prison officials' actions in this particular infraction.  Essentially, plaintiff

04   challenges the 90 day loss-of-privileges sanction that was imposed for his October 16, 2002

05   infraction.  It is unclear whether plaintiff exhausted this claim administratively.  The exhibits

06   provided by the parties do not conclusively show that plaintiff challenged this sanction through all

07   levels of the prison grievance system.

08        However, even assuming that plaintiff exhausted this claim, it lacks merit.  In brief, plaintiff

09   cites no authority for the proposition that his loss of in-cell art privileges for 90 days  amounts to

10   an unreasonable restriction on his First Amendment rights.  As plaintiff concedes, a prisoner's

11   artistic freedom may be curtailed if the restriction furthers the legitimate penal objective of

12   maintaining security.  (Dkt. #252 at 41, *citing Pell v. Procunier*, 417 U.S. 817, 822-23 (1974)).

13   Here, a 90-day abridgment of plaintiff's First Amendment rights appears reasonably related to such

14   a legitimate penological interest.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  Accordingly,

15   plaintiff has failed to satisfy his burden of showing a genuine issue of fact regarding the infraction

16   of November 23, 2002 and defendants' motion for summary judgment should be granted as to this

17   claim.[13]

18   / / /

19

20       [12] Defendants mistakenly cite "Exhibit 2, Attachment D" to support this statement.

21       [13] Additionally, the Court notes that plaintiff's assertion that defendant Williams found the sanction here improper is not borne out by the record.  Williams' deposition, cited by plaintiff, is highly equivocal, as Williams frequently expresses uncertainty in response to plaintiff's questions,

22   which often involve hypothetical situations not directly at issue here.  (Dkt. #252, Ex. 47 at 28).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -19

01      e.      December 11, 2002 Infraction

02      On December 11, 2002, plaintiff's cell was searched by corrections officers accompanied

03  by a dog trained to detect drugs.  (Dkt #208, Ex. 3, Attachment V).  The dog found marijuana

04  hidden inside plaintiff's typewriter.  (*Id.*)  At his hearing, it appears that plaintiff testified that he

05  had requested a urinalysis to show that he had not been using drugs.  (*Id.*, Attachment W).  The

06  hearing officer found plaintiff guilty.

07      Plaintiff contends that several factors make this infraction suspect.  (Dkt. #252 at 64).  In

08  essence, he alleges that defendants planted the marijuana in his cell in order to "get rid of plaintiff

09  once and for all . . . ."  (Dkt. #252 at 65).  However, plaintiff does not offer anything other than

10  his own patchwork of speculative observations to support this assertion.  Accordingly, plaintiff

11  has failed to satisfy his burden of showing a genuine issue of fact regarding the infraction of

12  December 11, 2002 and defendants' motion for summary judgment should be granted as to this

13  claim.

14      f.      January 27, 2004 Infraction

15      On January 27, 2004, corrections officers searched plaintiff's locker in the prison's hobby

16  shop and found drawings of nude girls that they believed violated the prison's prohibition against

17  possession of sexually explicit materials.  (Dkt #208, Ex. 3, Attachment X).  After  a hearing,

18  however, the charge was dismissed.  (*Id.*, Ex. Y).  Plaintiff contends that the search was conducted

19  in retaliation for his prior protected activities.  To support his claim, plaintiff asserts that he later

20  spoke with the hobby shop supervisor, Mr. Servatous, who told him that one of the officers who

21  conducted the search was "out to get him."  (Dkt. #253 at ¶ 211).

22      The Court finds that the record does not support plaintiff's contention that the search was

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -20

01  conducted for retaliatory purposes.  Plaintiff's assertion regarding the statement by Mr. Servatous

02  is based upon plaintiff's own recollection and not upon a sworn statement from Mr. Servatous

03  himself.  In addition, plaintiff's declaration indicates that Mr. Servatous made this statement *after*

04  the charge resulting from the search had been dismissed, and that Mr. Servatous thought that the

05  dismissal had angered the officer who had conducted the search.  Therefore, even if it were given

06  weight, the statement by Mr. Servatous is not probative of the officer's intent in conducting the

07  search.  Accordingly, plaintiff has failed to satisfy his burden of showing a genuine issue of fact

08  regarding the infraction of January 27, 2004 and defendants' motion for summary judgment should

09  be granted as to this claim.

10      g.    April 12, 2004 Infraction[14]

11      On April 12, 2004, corrections officers searched plaintiff's cell and found drawings and

12  photographs of nude minors.  (Dkt #208, Ex. 3, Attachment AA).  (*Id.*)  After a hearing, however,

13  the charge was dismissed.  (*Id.*, Ex. BB).  Plaintiff contends that the search was conducted at the

14  behest of defendant David Bustanoby, a supervisor at the prison, who allegedly told plaintiff that

15  "he was going to try and have him found guilty of possessing child pornography."  (Dkt. #252 at

16  66).  To support his claim, plaintiff relies solely upon his own declaration.  (*Id.*)

17      The Court finds that the record does not support plaintiff's contention that the search was

18  conducted for retaliatory purposes.  Plaintiff's unsupported assertion regarding defendant

19  Bustanoby's motives lacks probative value.  Accordingly, plaintiff has failed to satisfy his burden

20

21      [14] Defendants mistakenly refer to this infraction as having occurred on May 12, 2004.

22  (Dkt. #208 at 32).  However, the record shows that the infraction occurred on April 12, 2004.
    (Dkt. #208, Ex. 3 at Attachment AA).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -21

01 of showing a genuine issue of fact regarding the infraction of April 12, 2004 and defendants'

02 motion for summary judgment should be granted as to this claim.

03        h.    <u>August 5, 2004 Infraction</u>

04       On August 5, 2004, corrections officers searched plaintiff's locker in the hobby shop and

05 found nude drawings and a statuette of a minor female.  (Dkt #208, Ex. 3, Attachment CC).

06 Plaintiff was infracted for possession of sexually explicit material.  After a hearing, however, the

07 charge was dismissed.  (*Id.*, Ex. EE).

08       Plaintiff alleged in his supplemental complaint that the search was prompted by retaliatory

09 motives.  (Dkt. #112 at ¶ 24).  However, the allegations do not provide any details regarding the

10 officers' purported retaliatory motives.  Nor does plaintiff explain why he believes the search was

11 retaliatory in his response to defendants' motion for summary judgment, as he does not address

12 this particular claim.  Accordingly, plaintiff has failed to satisfy his burden of showing a genuine

13 issue of fact regarding the infraction of August 5, 2004 and defendants' motion for summary

14 judgment should be granted as to this claim.

15        i.    <u>Plaintiff's Request to View Retaliation Claims as a Whole</u>

16       Finally, plaintiff urges the Court to view all of his retaliation claims as a whole and not as

17 isolated incidents, because when they "are added up, they constitute a pattern of circumstantial

18 evidence that . . . clearly points to an ongoing concerted effort to retaliate against him."  (Dkt.

19 #252 at 54).  While certain types of circumstantial evidence, such as the timing of events, may be

20 probative of whether defendants acted with retaliatory intent,  *see Soranno's Gasco, Inc. v.*

21 *Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989), plaintiff's request to view the incidents as a whole

22 is tantamount to asking the Court to consider the sheer number of incidents as probative of

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -22

01 retaliation.  The Court declines to ascribe bad faith to corrections officials on the sole basis of the

02 volume or frequency of their actions.

03    3.    Plaintiff's Retaliation Claim Regarding Loss of Property

04    Ordinarily, "a negligent or intentional deprivation of a prisoner's property fails to state a

05 claim under section 1983 if the state has an adequate post deprivation remedy." *Barnett v.*

06 *Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).  However, in the previous R&R, the Court stated that

07 "to the extent that plaintiff is alleging that defendants have confiscated his property *in retaliation*

08 for engaging in protected activities, such claims would appear to be cognizable in a § 1983

09 action." (Dkt. #90 at 18, citing *Rhodes v. Robinson*, 380 F.3d 1123, 1128-29 (9th Cir. 2004)

10 (emphasis added)).  Accordingly, the Court recommended that plaintiff be permitted to seek relief

11 for loss of property to the extent that his property was lost or destroyed in retaliation for engaging

12 in protected activities.

13    Plaintiff alleges repeatedly that DOC officials destroyed or did not return valuable artwork

14 belonging to him.  In all but a few cases, however, the artwork in question had been determined

15 to violate the prison's ban on sexually explicit material.  Obviously, that artwork could not be

16 returned to plaintiff.  The basis for plaintiff's claim that prohibited artwork should not have been

17 destroyed is unclear as plaintiff does not cite any prison rule or policy under which  the artwork

18 should have been held by the prison for him until he is released or perhaps mailed out to a third

19 party.  In a few instances, plaintiff alleges that prison officials destroyed artwork that was   *not*

20 found to be sexually explicit.  (*See, e.g.*, Dkt. #252 at 49; Ex. 117).  Presumably, in these cases

21 the prison had a duty to return the confiscated property to plaintiff and consequently, these claims

22

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -23

01  appear to potentially have more merit.[15]

02  However, defendants do not address these allegations either in their motion for summary

03  judgment or in their reply.[16]  It is unclear whether this omission is the result of a conscious choice

04  or whether these claims simply escaped the notice of defendants amidst the plethora of plaintiff's

05  other claims.  In any event, because defendants have not moved for summary judgment on this

06  particular retaliation claim, the Court makes no recommendation on whether summary judgment

07  should be granted on the claim.  The Court notes that defendants' omission renders their motion

08  for summary judgment a motion for *partial* summary judgment.  The Court further notes that the

09  District Court, in its discretion, may permit further briefing on this issue in order to attempt to

10  resolve it without the necessity of a trial.

11      4.    Parole Denials

12  As the Court noted in the previous R&R, plaintiff appears to maintain that defendants

13  retaliated against him by manufacturing false infractions for the purpose of "sabotaging" his parole

14  hearings.  (Dkt. #90 at 17).  This claim hinges on plaintiff showing the infractions to be  "false."

15  However, as discussed above, in each instance, the infractions were prompted by legitimate

16

17      [15] Nonetheless, the mere fact that property belonging to plaintiff may have been improperly

18  destroyed on a few occasions does not alone seem sufficient to warrant an inference that the property was destroyed in retaliation for plaintiff's protected activities.  In *Rhodes*, for example,

19  the Ninth Circuit cited evidence of prison officials being angry at the prisoner which, in conjunction with the destruction of the prisoner's property, raised an inference of retaliation. 380

20  F.3d at 1128-29. Here, plaintiff does not offer any such credible corroborating evidence to bolster his allegation of retaliation.

21      [16] Defendants make a passing reference to plaintiff's claim of retaliation based upon lost

22  property in their motion for summary judgment, but do not discuss the claim in any detail.  (Dkt. #208 at 26).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -24

01  penological reasons.  *See Pratt v. Rowland,* 65 F.3d 802, 806-07 (9th Cir. 1995).  Thus, the

02  premise for plaintiff's claim that defendants sabotaged his parole hearings has not been established.

03  Accordingly, plaintiff has failed to satisfy his burden of showing a genuine issue of fact and

04  defendants' motion for summary judgment should be granted as to this claim.

05          5.      Psychological Evaluations

06                  a. Dr. Dahlbeck

07          In 2002, in preparation for his upcoming parole hearing before the Indeterminate Sentence

08  Review Board ("ISRB"), plaintiff was scheduled for a psychological examination to be performed

09  by Dr. Ronald Dahlbeck. (Dkt. #252, Ex. 85).  As part of the examination, Dr. Dahlbeck informed

10  plaintiff that he would consider the artwork that had been the subject of the  infraction of July 2,

11  2001, which had been dismissed.  (*Id.*)  As discussed above, even though the artwork had been

12  determined  to  not  violate  the  prison's  ban  on  sexually  explicit  material,  it  had  led  to  the

13  cancellation of plaintiff's extended family visits with his daughter.

14          Once plaintiff was informed by Dr. Dahlbeck that he would be considering the artwork as

15  part of his report, plaintiff decided to cancel the examination.  Plaintiff apparently felt that the

16  artwork was shielded from discussion by the same regulation that he felt should have precluded

17  its use by the CPS social worker who had recommended curtailing his family visits.  (Dkt. #253,

18  § 114).  Plaintiff asserts that because Dr. Dahlbeck was planning to discuss plaintiff's artwork, he

19  was therefore willing "to take part in retaliating against him for his protected conduct."  (Dkt.

20  #252 at 59).

21          Defendants argue that plaintiff has failed to cite any authority that suggests "that Defendant

22  Dahlbeck violated Plaintiff's First Amendment rights by advising Plaintiff that he would consider

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -25

01   Plaintiff's drawing in conducting a psychological evaluation of Plaintiff."  (Dkt. #256 at 55).

02   Defendants point out that Dr. Dahlbeck did not provide the ISRB with a psychological report on

03   plaintiff in 2002, or at any time later, and that plaintiff chose to halt the process.

04        The Court finds that plaintiff's claim against Dr. Dahlbeck hinges upon two assumptions

05   that are not supported by the record: First, that Dr. Dahlbeck wished to retaliate against plaintiff

06   for some reason and second, that his report to the ISRB would have discussed the artwork in

07   question in a manner that harmed plaintiff's chances of getting parole.  Further, it appears that Dr.

08   Dahlbeck's consideration of the artwork was prompted by a legitimate penological goal, *i.e.*, to

09   present a complete picture of plaintiff's psychological state.  For these reasons, plaintiff has failed

10   to satisfy his burden of showing a genuine issue of fact and defendants' motion for summary

11   judgment should be granted as to this claim.

12            b. <u>Dr. Carsrud</u>

13        In 2004, plaintiff agreed to be interviewed by Dr. Robert Carsrud, in preparation for

14   another parole hearing before the ISRB.  The result of that interview is reflected in the report

15   issued by Dr. Carsrud on October 12, 2004, a copy of which plaintiff has attached as an exhibit

16   to his response.  (Dkt. #252, Ex. 182).  Dr. Carsrud concluded the report with the following

17   observations:

18       Mr. Clark's history demonstrates a tendency to function as a "crusader."  The instant
         offense [plaintiff's conviction for murder] was committed ostensibly in retribution for
19       harm caused to his girlfriend.  He appears to assert himself and his rights even in
         circumstances that other people may see as inconsequential or in ways that may cause
20       conflicts with other people. *This is not in and of itself necessarily a negative trait
         inasmuch as there are times when such an approach is effective in bringing about
21       needed changes in a relationship or an organization.*

22   (Dkt. #252, Ex. 182 at 8) (emphasis added).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -26

01    Plaintiff alleges that Dr. Carsrud "retaliated against him by having made issue of his legal

02  activities when formulating a psychological profile of him, which created a significant chilling

03  effect on his constitutionally protected activities." (Dkt. #252 at 68). Plaintiff also asserts that

04  Dr. Carsrud's report contained "numerous references to the Plaintiff's legal battles with the

05  DOC."[17] (*Id.*)

06    Plaintiff's allegations are not supported, if not flatly contradicted, by the report itself. The

07  Court has reviewed the entire report and finds no actual reference to plaintiff's "legal battles with

08  the DOC." Dr. Carsrud does describe plaintiff's personality as assertive, but as indicated above,

09  he does not present this trait in strictly a negative light. Therefore, plaintiff has failed to satisfy

10  his burden of showing a genuine issue of fact and defendants' motion for summary judgment

11  should be granted as to this claim.

12    6. Classification Reports

13    Plaintiff alleges that on several occasions, defendants sabotaged his parole hearings by

14  providing the ISRB with "classification reports" that were prepared by DOC staff and contained

15  false and inflammatory information. (Dkt. #252 at 46, 58-59, 66-67). For example, plaintiff

16  asserts that defendants "falsely report[ed] to the ISRB within the Plaintiff's 6/17/04 Classification

17  report that the Plaintiff had been found guilty of possessing pornographic drawings of his daughter

18  as associated with the dismissed 7/02/01-728 infraction event." (*Id.* at 46).

19

20

---

21    [17] The Court notes that plaintiff refers to the date of the report as "10/24/04." (Dkt. #252
    at 68). However, the record shows that the date of the report is actually October 12, 2004. (Dkt.
22  #252, Ex. 182 at 1).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -27

01        Although defendants do not appear to address these assertions in their motion for summary

02   judgment, the Court   *sua sponte*   finds that these claims are subject to dismissal because the

03   allegations, even if true, are barred from consideration in this lawsuit by the doctrine of *Heck v.*

04   *Humphrey*, 512 U.S. 477 (1994).   Under   *Heck*, a civil rights complaint under § 1983 cannot

05   proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his

06   conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

07   demonstrate that the conviction or sentence has already been invalidated."  512 U.S. at 487. If

08   plaintiff were successful in his argument that DOC submitted false classification reports to the

09   ISRB and the ISRB denied him parole as a result, such a result would necessarily imply that the

10   ISRB's decision was invalid.  Accordingly, because plaintiff has not offered any evidence that the

11   ISRB's denial of parole has already been overturned, he may not proceed with the claim here and

12   it should be dismissed for failure to state a claim upon which relief can be granted.    [18]   *See* 28

13   U.S.C. § 1915(e)(2)(B)(ii).

14        7.    Transfer

15        Plaintiff asserted in his complaint that he had been transferred from one prison to another

16   in 2002 in retaliation for engaging in litigation against the DOC.     *See* Complaint ¶ 119(g).

17   Defendants have provided exhibits that show the 2002 transfer to have been based upon several

18   non-retaliatory reasons, including the fact that his former prison was becoming a "close custody"

19   ─────────────────

20        [18] The recent Supreme Court decision in  *Wilkinson v. Dotson*, 544 U.S. 74 (2005),
     permitting a § 1983 plaintiff to challenge parole procedures, is distinguishable.  In  *Dotson*, the
21   Court held that the lawsuit was permissible because the prisoner's claim did not "necessarily spell
     speedier release" but merely would have resulted in a new hearing. *Id.* at 82. Here, by contrast,
22   plaintiff is asserting, essentially, that he would have been released had the ISRB not been
     influenced by the false information.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -28

01  institution and plaintiff was classified as a medium custody inmate. (Dkt. #208, Ex. 3, Attachment

02  GG). Plaintiff's response does not seem to address this issue. Accordingly, plaintiff has failed

03  to satisfy his burden of showing a genuine issue of fact and defendants' motion for summary

04  judgment should be granted as to this claim.

05      8.    Job Termination

06      Plaintiff asserted in his supplemental complaint that he was terminated from his job in the

07  prison hobby shop in retaliation for having filed a grievance regarding a prior infraction.  (Dkt.

08  #112 at ¶¶ 29-31). Defendants have provided exhibits that show the termination was based upon

09  non-retaliatory reasons related to plaintiff's job performance. (Dkt. #208, Ex. 3, Attachment OO).

10  Plaintiff's response does not seem to address this issue. Accordingly, plaintiff has failed to satisfy

11  his burden of showing a genuine issue of fact and defendants' motion for summary judgment

12  should be granted as to this claim.

13      C.  Miscellaneous Claims

14      Defendants contend that the following individuals should be dismissed from this lawsuit

15  because they are either protected by immunity or are not specifically mentioned in plaintiff's

16  complaints:

17      Dean Mason

18      Plaintiff asserts in his response that Dean Mason, who was the Grievance Program

19  Manager in the DOC when plaintiff filed the instant lawsuit (Dkt. #208, Ex. 4), retaliated against

20  him by failing to respond properly to plaintiff's grievance regarding the psychological report issued

21  by Dr. Carsrud. (Dkt. #252 at 75, 68). This claim is apparently different than another claim that

22  plaintiff has raised against Mason regarding a declaration filed by Mason in a previous lawsuit.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -29

01   Defendants argue that Mr. Mason is shielded by witness immunity from any damages stemming

02   from his earlier testimony (Dkt. #208 at 34, *citing Briscoe v. LaHue*, 460 U.S. 325, 330 (1983)),

03   and that injunctive relief is not available against him because he is no longer employed by the

04   DOC.  (Dkt. #256 at 7).

05        Plaintiff's claim against defendant Mason regarding Dr. Carsrud's report lacks support as

06   the Court has previously indicated that plaintiff's objections to the report lack substance.  In

07   addition, Mason appears to be immune from liability or injunctive relief regarding his prior

08   testimony.  Accordingly, plaintiff has failed to satisfy his burden of showing a genuine issue of fact

09   and defendants' motion for summary judgment should be granted as to these claims.

10        <u>L.M. Connor and Andrew Votry</u>

11        Defendants assert that plaintiff's complaints do not mention either of the above defendants.

12   Plaintiff responds that he has alleged retaliation by defendant Connor but plaintiff fails to mention

13   defendant Votry.  (Dkt. #252 at 75).  The Court notes that Votry was dismissed from this lawsuit

14   by Order of the Court on March 19, 2007.  (Dkt. #245).

15        Plaintiff's allegations regarding Connor pertain to plaintiff's hearing on the marijuana

16   infraction, held on December 11, 2002.  Connor was apparently the hearing officer and plaintiff

17   accuses him of not allowing plaintiff to explain how the marijuana had been planted in his cell and

18   not verifying for himself that the substance seized was actually marijuana.  (Dkt. #252 at 64).

19   These allegations lack support in the record.  Accordingly, plaintiff has failed to satisfy his burden

20   of showing a genuine issue of fact and defendants' motion for summary judgment should be

21   granted as to this claim.

22   / / /

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -30

01       Richard Hall

02       Defendants note that Richard Hall was dismissed from this lawsuit by Order of the Court

03 on March 15, 2006 (Dkt. #152), but that the docket sheet still lists him as an active defendant.

04 The Clerk is directed to correct this error by terminating Richard Hall as an active defendant.

05                              D.  Immunity

06       Defendants argue that even if any of their actions violated plaintiff's constitutional rights,

07 they are entitled to qualified immunity.  (Dkt. #208 at 35).  Because the Court has found that

08 plaintiff has failed to satisfy his burden of showing a genuine issue of fact regarding the

09 constitutional violations, the Court need not address the question of qualified immunity. *See Scott*

10 *v. Harris*, __U.S.__, 127 S. Ct. 1769, 1774 (2007) ("If, and only if, the court finds a violation of

11 a constitutional right, the next sequential step is to ask whether the right was clearly established.")

12 (internal citation and quotation omitted).

13                              **Conclusion**

14       Consistent with the discussion above, the Court recommends that defendants' motion for

15 summary judgment be construed as a motion for partial summary judgment, encompassing all of

16 plaintiff's claims except for his claims of retaliation based upon lost or destroyed property.  So

17 construed, the motion should be granted.  In addition, plaintiff's claims based upon the

18 classification reports should be dismissed for failure to state a claim upon which relief can be

19 granted.  A proposed Order accompanies this Report and Recommendation.

20       DATED this 31st day of May, 2007.

21                                    Mary Alice Theiler
                                      United States Magistrate Judge
22

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE -31